UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BECKWITH, | ) | Case No. 1:10CV1683 |
| Petitioner, | ) | |
| vs. | ) | JUDGE DONALD NUGENT |
| | ) | (Magistrate Judge McHargh) |
| KEITH SMITH, | ) | |
| Warden, | ) | |
| Respondent. | ) | REPORT AND RECOMMENDATION |

McHARGH, Mag.J.

The petitioner Michael Beckwith ("Beckwith") filed a petition for a writ of habeas corpus arising out of his 2007 convictions for rape and attempted murder, in the Cuyahoga County (Ohio) Court of Common Pleas. (Doc. 1.) In his petition, Beckwith raises two grounds for relief:

> 1. Petitioner's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution was violated where the trial court abused it [sic] discretion by denying Petitioner's motion to withdraw his guilty plea even though a clear and apparent manifest injustice existed.
>
> 2. Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution where counsel provided erroneous advice regarding the

sentence which played a substantial part of inducement for guilty plea.
(Doc. 1.)  The respondent has filed a motion to dismiss the petition as time-barred.
(Doc. 7.)  Beckwith has not responded to the motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural background:

> Beckwith originally was indicted in this case in June 2006 on eight counts.  Each related to the same adult female victim, and all were alleged to have occurred on December 13, 1996.  The indictment charged Beckwith with two counts of rape, two counts of kidnapping, two counts of aggravated robbery, one count of attempted murder, and one count of felonious assault.  Counts one through four, and count seven, each contained both a three-year firearm specification and a sexually violent predator ("SVP") specification; counts five and six contained a three-year firearm specification, and count eight contained both a one-year and a three-year firearm specification.
>
> Beckwith received assigned counsel to represent him.  The record reflects that, over the ensuing months, counsel filed the necessary motions on his client's behalf, and attended no less than seven pretrial hearings between his appointment to the case in July 2006 and the January 2007 trial date.
>
> The record further reflects that Beckwith's indictment on the instant charges resulted from a match of his DNA, which had been entered into law enforcement's "combined index system," * with DNA contained in a "rape kit" taken from the victim immediately after the incident.  Beckwith's counsel sought, and obtained, an independent laboratory analysis to confirm the match.
>
>      * The prosecutor referred to this as "CODIS."
>
> On the date set for trial, the parties informed the court that a plea agreement had been reached.  As outlined by the prosecutor, the state would dismiss the remaining counts in exchange for Beckwith's guilty

2

plea to count one, rape, and to count seven, attempted murder, both amended to delete the SVP specifications, and count seven also to delete the firearm specification.

The prosecutor noted that one of the factors Beckwith had considered in accepting the agreement was the fact that, if convicted of the SVP specification, "that could impose* * *a life imprisonment tail." If he entered these pleas, Beckwith would receive a sentence on count one of "anywhere from three to ten years, plus a firearm specification," which was "three years." As a first-degree felony, count seven also carried a three to ten year term.

The prosecutor further noted, "No threats or promises, no agreements with regard to what sentence Mr. Beckwith [would] get in this case." The parties had "not discussed that." Beckwith's trial attorney concurred with the prosecutor's statements, and added that his client had "discussed this with [him] numerous times and he ha[d] agreed to the plea bargain."

The trial court thereupon conducted a careful and thorough colloquy with Beckwith. After outlining the penalties involved with the charges, the court then stated to him, "It appears* * *that there is no agreement in this plea agreement that's been reached as to how I would sentence you. I have not had any discussions with your attorney or with [the prosecutor] other than what you and I just heard together in open court."

The trial court thereupon asked Beckwith, "So no promises* * *have been made to you, have they, with regard to how the Court would sentence you?" Beckwith responded, "Nope." The court proceeded with the remainder of the colloquy. At its conclusion, the court reminded Beckwith that he was facing three to ten years on each count, with an additional three years for the firearm. Beckwith answered, "Yes" when asked if he understood.

When Beckwith entered his guilty pleas to each count, the court found Beckwith was entering his pleas knowingly, voluntarily, and intelligently. It then proceeded to the sentencing phase of the proceeding.

The prosecutor described the circumstances surrounding the incident. According to Beckwith's criminal history, he had committed numerous violent crimes in 1996, and finally had been "picked up" on one on

> December 16 of that year. Three days earlier, he had committed the offenses in the instant case; he was not yet twenty years old.
>
> Beckwith "caught up with" the victim as she walked on the street "in the middle of the afternoon," pulled out a gun, and forced her into a secluded area, where he ordered her to strip, took her identification cards, and raped her both vaginally and orally. Afterward, Beckwith put the gun to her and pulled the trigger, but "the gun did not go off when she heard the click." Beckwith threatened her verbally before leaving her there, naked.
>
> The victim made a statement to the court concerning the effect of the incident on her life. When presented with the opportunity to apologize, Beckwith expressed scant regret.
>
> The trial court ultimately imposed upon Beckwith a total term of fourteen years for his convictions in this case, viz., consecutive terms of three years for the firearm specification, ten years for the rape, and four years for the attempted murder. The court further ordered this sentence to be served consecutively with the terms imposed in five other cases. Beckwith made no comment about his sentence prior to the conclusion of the hearing.
>
> Nevertheless, approximately a year later, Beckwith filed a Crim.R. 32.1 motion to withdraw his pleas. He claimed in his motion that he was "actually innocent" of the charges, and that his pleas were induced by his trial counsel's "deception." Beckwith stated in his affidavit attached to the motion that his counsel had promised him he would receive a sentence that "would be served concurrently with" his other sentences.
>
> The trial court subsequently issued a journal entry denying Beckwith's motion to withdraw his pleas.

(Doc. 7, [RX 14](), at 1-5; [State v. Beckwith, No. 91399, 2009 WL 712957, at *1-*3 (Ohio Ct. App. Mar. 19, 2009)]().)

Beckwith filed the motion to withdraw his guilty plea, pursuant to Ohio Crim. Rule 32.1, on March 26, 2008, which was denied by the trial court. (Doc. 7, [RX 7]().) Beckwith filed an appeal of that decision, but the court of appeals affirmed

the judgment of the lower court.  (Doc. 7, RX 14, at 9; Beckwith, 2009 WL 712957, at *4.)

Beckwith filed an appeal to the Supreme Court of Ohio on May 11, 2009.  (Doc. 7, RX 15-16.)  The court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question, on Sept. 16, 2009.  (Doc. 7, RX 17.)

Beckwith filed this petition for a writ of habeas corpus on Aug. 2, 2010.  (Doc. 1.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas

> court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

## III. STATUTE OF LIMITATIONS

The respondent argues that Beckwith's petition should be barred because it was untimely filed. (Doc. 7, at 8-10.)

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking a federal writ of habeas corpus to file his petition within one year after his state conviction has become "final." Carey v. Saffold, 536 U.S. 214, 216 (2002) (citing 28 U.S.C. § 2244(d)(1)(A)). The conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Thus, the one-year statute of limitations does

not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari.  Clay v. United States, 537 U.S. 522, 528 n.3 (2003); Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002); Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001), cert. denied, 534 U.S. 924 (2001) (citing cases).

Beckwith was sentenced on his conviction on Jan. 29, 2007.  (Doc. 7, RX 3.)  Under Ohio law, Beckwith had 30 days within which to file his direct appeal after the date of sentencing.  Ohio R. App. P. 4(A).  Since he did not file a timely direct appeal, his conviction became final 30 days after the journal entry of sentencing on Feb. 5, 2007.  (Doc. 7, RX 4.)  Thus, the statute began to run on March 7, 2007, and expired one year later.  See, e.g., Goodballet v. Mack, 266 F.Supp. 2d 702, 705 (N.D. Ohio 2003).

Beckwith filed his motion to withdraw his guilty plea in the trial court on March 26, 2008.  (Doc. 7, RX 6.)  By that time, however, the habeas statute of limitations had already expired.  Although filing a post-conviction or collateral motion may toll the running of a  pending, unexpired one-year limitations period, Souter v. Jones, 395 F.3d 577, 585 (6th Cir. 2005), it will not "revive" the statute, or cause it to begin running anew.  Hill v. Randle, No. 00-4168, 2001 WL 1450711, at *2 (6th Cir. Nov. 7, 2001); Searcy v. Carter, 246 F.3d 515, 519 (6th Cir.), cert. denied, 534 U.S. 905 (2001); Leon v. Bradshaw, No. 1:05CV875, 2006 WL 1624430, at *4 (N.D. Ohio June 6, 2006); Goodballet, 266 F.Supp. 2d at 705-706.

Beckwith filed a petition for a writ of habeas corpus in this court on Aug. 2, 2010, over two years after the statute had run.  Beckwith failed to file his habeas petition within the statutory time limit.

## V.  SUMMARY

The motion to dismiss (doc. 7) the petition for a writ of habeas corpus should be granted, because Beckwith failed to file his habeas petition within the statutory time limit.

## RECOMMENDATION

It is recommended that petition for a writ of habeas corpus should be dismissed.

Dated:  Apr. 7, 2011              /s/ Kenneth S. McHargh
                                  Kenneth S. McHargh
                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).